```
FILED
CLERK, U.S. DISTRICT COURT

03/28/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ____AP____ DEPUTY
```

1  Jeff and Lynn Macy P.O.A. "In Pro Per"
   P.O. Box #103
2  Twin Peaks, Ca. 92391
   (909) 744 -8480
3  macybuilders@yahoo.com

4              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                      COUNTY OF SAN BERNARDINO
5

6  PLAINTIFF(S) NAMES,                    Case No.: **TBD**   5:23-cv-00558-JGB(RAO)

7          Jeff and Lynn Macy,           COMPLAINT FOR DAMAGES AND
   vs.                                    DEMAND FOR JURY TRIAL FOR:
8  DEFENDANT(S) NAMES,                    **(1)** Trespassing.
                                          **(2)** Harassment.
9          San Bernardino County         **(3)** Discrimination.
   Code Enforcement, Code Enforcement     **(4)** Cover up.
10 Officers et al.                        **(5)** Threat for lien against property.
                                          **(6)** Threat of administration citations
11                                        **(7)** Threat of civil prosecution.
                                          **(8)** Threat of criminal prosecution.
12                                        **(9)** Threat to recover regulatory costs.
                                          **(10)** Threat of $76 administrative fees.
13                                        **(11)** Threat of $627 per hour to abate.
                                          **(12)** Threat of unregulated, unknown
14                                        charge without an estimate.
                                          **(13)** Undue burden upon homeowners
15                                        with undue service.
                                          **(14)** Unelected officials creating laws
16                                        that go against federal and state
                                          constitutions, laws.
17

18

19           **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

20

21 **San Bernardino County Code Enforcement. Firewood common sense ordinance:**

22 **909-884-4056**

23 **84.12.040 zoning permit** "Class 3" page 4-56.

24 http://www.sbcounty.gov/Uploads/LUS/Code/HomeOccupationHandout.pdf

25 **(c) Class III Home Occupation. Class III Home Occupations shall have a limited**

26 **impact on the neighborhood in which they are located but also** <u>are slightly more</u>

27 <u>intense than Class II in that they may involve the direct sales of products or</u>

28 <u>merchandise to the public.</u> **Subject to specific standards in Section 84.12.100**

**(Class III Home Occupation Standards),** <u>**up to five nonresident employees shall be allowed**</u>**.** <u>**Typical activities shall include an activity that has direct sales of products**</u> **or merchandise or requires more than two nonresident employees. Certain allowed activities may also include those listed in 84.12.060 (Allowed Home Occupations in Desert Region).** ←*No where does class 3 say "firewood" sales is not allowed. Also says: Certain allowed activities" in Desert Region allows also for mountain region.*

<u>**U.S. Department of the interior, THE BUREAU OF LAND MANAGEMENT**</u>

https://www.blm.gov/programs/natural-resources/forests-and-woodlands/forest-product-permits

**Firewood used to heat people's homes is also considered a special forest product**; in fact the BLM sells between 30,000 to 40,000 cords of firewood every year. **Special forest products found on public lands may be harvested for recreation, personal use, or as a** <u>**source of income**</u> such as harvesting and selling fence posts and poles.

**California Forest Products**

In **California, forest products such as firewood**, Christmas trees, greenery, mosses, transplants, poles, posts, seeds, and burls **are available for commercial and** <u>**non-commercial sale**</u> in designated areas.

<u>**San Bernardino National Forest**</u>

https://www.fs.usda.gov/main/sbnf/passes-permits/forestproducts

**Limit 10 cords per year**, per household. $20 cord, minimum purchase 2 cords $40.

The Goldspotted Oak Borer is an invasive pest transported in oak firewood, so it is critical that Californians keep firewood local and not

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 2

move it out of the area. To help stop the spread of Goldspotted Oak Borer use firewood from local sources - "Buy it Where you Burn It."  Also, leave firewood at home - do not transport it to recreational cabins, campgrounds or parks. Anyone planning to purchase or burn firewood is encouraged to visit the Firewood Task Force to learn how help stop the spread of Goldspotted Oak Borer and other pests through the movement of firewood. (Bark bettle)

http://firewood.ca.gov/  **"Buy it where you burn it". ←Firewood task force.**

http://www.firewood.ca.gov/docs/FirewoodQA.pdf

Question and Answers

"**1.** Why should I be cautious about moving firewood? Firewood can carry invasive insects and diseases that can kill native trees. New infestations of these insects and diseases can destroy our forests, lessen property values, and cost a great deal to monitor, manage, and control. **2.** Which firewood-related pests should I be concerned about in California? Insects such as Emerald ash borer, goldspotted oak borer, Sirex woodwasp, gypsy moth and Asian longhorned beetle, or diseases, such as Sudden Oak Death, can be carried by firewood. **3.** Why are non-native insects and diseases so much worse than the native ones? Native trees have evolved to survive with local insects and diseases. Likewise, native predators eat native insects and that keeps their numbers in check (environmental balance). Non-native insects and diseases have few (if any) predators, and the native trees have few natural defenses against them. Invasive insects and diseases reproduce quickly and outcompete native species. **4.** What are other states and regions in the United States doing about this issue? Some Midwest and East Coast states have quarantines that prevent you from moving firewood more than 50 miles, others don't allow you to move

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 3

wood from county to county, and some states don't allow firewood to be transported from other states. **5**. My firewood has no visible signs of insect or disease infestation. There are no bugs, holes, burrows, or sawdust. Is it OK to transport it? Tiny insect eggs, or microscopic fungus spores, can elude experts. These tiny threats are enough to destroy an entire ecosystem. Never assume wood that "looks safe" is safe to move. **6**. How far is too far? A good rule of thumb is "The shorter the distance you move firewood, the better." **7**. How should I dispose of my firewood if I accidentally move it a long distance? Burn it quickly and completely. The sooner and faster you burn the wood, the less risk you'll pose to local live trees. Make sure to also rake up any dropped leaves, bark, twigs or other debris and burn them, as well (Note: Please check burning restrictions/regulations before burning wood waste). **8**. What can I do with the fallen wood and brush from my property? Firewood, brush, and debris from your property pose no threat if you don't move it very far. Composting, chipping, burning, or transporting it to a local disposal facility are acceptable ways of dealing with wood waste on your property. Moving firewood material long distances increases the risk. **9**. Where can I find out about firewood information in California? The Department of Agriculture has information about best management practices or rules and regulations relating to firewood. Also visit firewood.ca.gov or dontmovefirewood.org website for additional information. **10**. What can I do to reduce the chances of moving invasive species in firewood? —Don't Move Firewood: Buy It Where You Burn It. —Ask your firewood seller where he/she obtained the wood. If it isn't nearby, or its origin is unknown, consider obtaining your firewood from another local firewood seller."

**"Why is moving firewood such a bad idea?** Tree-killing insects and diseases can lurk in firewood. These insects and diseases can't move far on their own, but

when people move firewood, they can jump hundreds of miles. New infestations destroy our forests, property values, and cost huge sums of money to control.

If cannot buy wood locally, then people will buy wood from far away-down the hill. Tree companies will then either leave wood on the ground or to land fill wasted wood."

**84.12.060** Ordinance SBCC 84.09.040 30' feet.  ←*Firewood on a rack (engineered to support load) is considered a structure, if covered with a fire-resistant tarp is sufficiently "enclosed" for this law.*

## U.S. DEPARTMENT OF AGRICULTURE

Firewood Last Modified: Mar 15, 2022

http://firewood.nationalplantboard.org/wp-content/uploads/2022/03/firewood_guidelines_aug2020.pdf

National Plant Board Firewood Guidelines

"Whether used to heat your home or build a campfire, **firewood is a must-have item for millions of Americans**. However, firewood also presents a very real threat to the Nation's forests. Invasive species including the Asian longhorned beetle (ALB), the emerald ash borer (EAB), and gypsy moth can be spread into new areas of the country on firewood. To help stop the spread of these pests, APHIS has established quarantines that limit the movement of firewood and other host materials. Some States have also adopted regulations limiting the movement of firewood. In addition, APHIS has implemented public awareness campaigns and other efforts in known infested areas. However, these actions alone are not enough; it is up to all of us to contribute to the preservation of our Nation's urban, suburban and rural landscapes by committing to not move firewood. By "burning where you buy it" you can be sure that you're not moving these damaging forest pests into new areas."

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 5

Section Overview: Regulations can be used to **prohibit firewood movement** or **restrict the distance** and type of firewood that can be moved into or within a state. Regulations are most effective when they include mechanisms for enforcement with penalties assessed for violations. The NPB Firewood Working Group has created a firewood regulation template and supporting materials for states to use if they are interested in pursuing a new or modified regulation. Supplemental resource materials will assist states to determine how to define firewood, select a standard to exempt certified heat-treated firewood, incorporate Compliance Agreements, consider Certification Programs, require consistent firewood labeling using plain language, and think about the challenges of enforcement.

**F. DEFINING FIREWOOD** Summary Statement: States should consider how firewood is defined. The definition of firewood can include information about intended use, size, and exclusions of other raw wood products. Broad definitions of firewood provide additional protections from pests moved in other raw wood products but can increase oversight by regulatory agencies. The public has a clear idea of how to define and recognize **firewood – it is burned in their fireplaces, wood stoves, and fire pits.** Broad definitions that include other raw wood products may confuse wood products industries and consumers.

Sample **Definitions Firewood** (a) "Firewood" means any kindling, logs, timber, or other portions of a tree of any species four (4) feet or less in length, cut or split, or intended to be cut or split, into a form and size appropriate for use as fuel for fires in open pit, grill, fireplace, stove, or other wood burning furnaces or devices. OR (b) **"Firewood"** means all wood of any species, cut or not cut, split or not split, regardless of length which is destined for use as a fuel."

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

←*Gas prices tripled this year 2022-2023. Firewood is cheaper to heat homes and is the #1 safety product needed in case of emergency. Firewood heats, cooks' food & boils water, provides light; does not require long travel distances to be purchased or self-processed!*

**Requirement of a connection with the grounds of <u>discrimination</u>:**

For a situation to involve **direct discrimination**, there must also be a connection between the **disadvantage and the ground of discrimination**.

The strongest connection is when there is an **intention to disadvantage a person on one of the grounds of discrimination**. However, there is **no requirement of intent or desire to disadvantage someone on one of the grounds of discrimination**. If someone **discriminates in order to satisfy some other person's wishes, it is also discrimination.** An example of this is a landlord who refuses to allow a person with a certain disability to rent an apartment because the other tenants do not want to have a **neighbour** with that disability. ←Clearly others in the mountain region can sell firewood in plain sight, along roads, websites.

1. Illegal Discrimination ← We are a "Christian" organization being targeted?
2. For entering your property without a warrant. Taking pictures while on our property? The Fourth Amendment of the U.S. Constitution grants you the right to be free from "<u>unreasonable searches and seizures.</u>" This right generally protects you from having law enforcement officers enter your property unless they have a warrant based upon "probable cause" (generally, a reasonable basis to believe a crime is being or has been committed).
3. You May Have a Civil Rights Lawsuit Under Section 1983
4. If a code enforcement official, such as a code inspector or building inspector, violates your rights, you may be able to sue them under federal

law. 42 U.S.C. section 1983 creates a civil rights claim you can file in either state or federal court against a code enforcement officer for violating your rights.

Lippman v. City of Oakland

The court of appeals' decision is a welcome vindication of the basic rights of property owners. Governments exist to protect our rights, not to vitiate (make ineffective) them. No city should look at its property owners with dollar signs in its eyes. Thanks to this important victory, property owners in Oakland and throughout the state (California) will be entitled to a fundamentally fair process before the government takes tens of thousands of dollars from them. That's something we can all celebrate.

"We decline the invitation to construe the reference to an "agency" in section 1.8.8.1 to include a single hearing examiner selected by the very enforcement agency whose decision is being appealed."

We are "PTSD2HEALTH" a non-profit organization and 26175 Augusta way lake arrowhead ca 92352 is our official headquarters.

https://www.ca-ilg.org/sites/main/files/file-attachments/local_agency_powers_and_limitations_1.pdf

**Preemption** As a general matter, the restriction on the exercise of a county or city's authority depends on whether the proposed **local enactment conflicts with federal or state general laws**. This is a concept known as "preemption." Federal or state law may preempt local officials' ability to legislate in a particular area, either explicitly or by implication. The test for preemption of local law by federal or state laws is similar. A local ordinance will be preempted by state law when it is in express conflict with state or federal law.3 Preemption may

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 8

also occur even when there is **no direct conflict if the state or federal
government** has fully occupied the area of law in general. 4 In the absence of
judicial decisions determining whether a particular form of local legislation is
preempted, the analytical process local agency lawyers must engage in to
advise their clients that a matter on whether such legislation has been
preempted can be complex.

### Overview

The preemption doctrine refers to the idea that a higher authority of law will
displace the law of a lower authority of law when the two authorities come into
conflict.

### Federal Preemption

When state law and federal law conflict, federal law displaces, or preempts,
state law, due to the Supremacy Clause of the Constitution. U.S. Const. art. VI., §
2. Preemption applies regardless of whether the conflicting laws come from
legislatures, courts, administrative agencies, or constitutions. For example,
the Voting Rights Act, an act of Congress, preempts state constitutions, and FDA
regulations may preempt state court judgments in cases involving prescription
drugs.

Congress has preempted state regulation in many areas. In some cases, such as
medical devices, Congress preempted all state regulation. In others, such as
labels on prescription drugs, Congress allowed federal regulatory agencies to
set national minimum standards, but did not preempt state regulations imposing
more stringent standards than those imposed by federal regulators. Where rules
or regulations do not clearly state whether or not preemption should apply, the
Supreme Court tries to follow lawmakers' intent, and prefers interpretations that
avoid preempting state laws.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 9

### State Preemption: Outright, Express, and Implied Preemption

Similar to federal and state laws, state laws will usually prevail when state and local laws are in conflict. As such, the main question courts will seek to answer is whether there is even a conflict.

Typically, 3 types of conflicts exist regarding preemption:

1. Outright conflict - when an ordinance directly opposes a state law
2. Express preemption - the state law directly opposes a local power
3. Implied preemption - this occurs when 1 of 3 things happen:

    1. When the local ordinance prohibits an act permitted by the state legislature
    2. When a local ordinance permits an act prohibited by the state legislature
    3. When there is clear legislative intent that the "field" is preempted by state law

        1. The "field" is usually defined as when there is an extensive scope of state regulation which reflects a state intent to preempt all local regulations that are in a particular area. Occupation of the field is likely to be found when state law addresses an area that has traditionally been a matter of the state (ex: mortgage foreclosure process).

Implied preemption is a controversial doctrine, because this preemption may be significantly harder to prevent than either outright or express preemption. As such, some states have outlawed implied preemption. Further, if a state specifically authorizes an action, then the local government typically cannot restrict the action.

### State Preemption: Field Preemption by Implication

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 10

Courts have found various ways to determine when a state legislature has preempted a particular field. In <u>Allied Vending Co. v Bowie</u> (1993), the court issued a seven-part test to determine whether a state legislature has preempted a field by implication:

1. Whether local laws existed prior to enactment of state laws of same subject matter
2. Whether statutes provide for pervasive admin regs
3. Whether ordinance regulates an area in which local control has been allowed
4. Whether state expressly gives concurrent authority
5. Whether state agency which administers/enforces the law has recognized legal authority to act
6. Whether the particular aspect of the field sought to be regulated has been addressed by state leg
7. Whether a 2-tiered regulatory process existing if local laws were not preempted would engender chaos & confusion

**VEHICLE CODE - VEH**

**DIVISION 11. RULES OF THE ROAD [21000 - 23336]**

*( Division 11 enacted by Stats. 1959, Ch. 3. )*

**CHAPTER 1. Obedience to and Effect of Traffic Laws [21000 - 21300]**

*( Chapter 1 enacted by Stats. 1959, Ch. 3. )*

**ARTICLE 3. Local Regulation [21100 - 21118]**

*( Article 3 enacted by Stats. 1959, Ch. 3. )*

# 21107.7.

(a) Any city or county may, by ordinance or resolution, find and declare that there are privately owned and maintained roads as described in the ordinance or resolution

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 11

within the city or county that are **not generally held open for use of the public for purposes of vehicular travel** but, by reason of their proximity to or **connection with highways**, the interests of any residents residing along the roads and the motoring public will best be served by application of the provisions of this code to those roads. No ordinance or resolution shall be enacted unless there is first filed with the city or county a petition requesting it by a majority of the owners of any privately owned and maintained road, or by at least a majority of the board of directors of a common interest development, as defined by **Section 4100 or 6534** of the Civil Code, that is responsible for maintaining the road, and without a public hearing thereon and 10 days' prior written notice to all owners of the road or all of the owners in the development. Upon enactment of the ordinance or resolution, the provisions of this code shall apply to the privately owned and maintained road if appropriate signs are erected at the entrance to the road of the size, shape, and color as to be readily legible during daylight hours from a distance of 100 feet, to the effect that the road is subject to the provisions of this code. The city or county may impose reasonable conditions and may authorize the owners, or board of directors of the common interest development, to erect traffic signs, signals, markings, and devices which conform to the uniform standards and specifications adopted by the Department of Transportation.

(b) The **department shall not be required to provide patrol or enforce any provisions of this code on any privately owned and maintained road** subjected to the provisions of this code under this section, except those provisions applicable to private property other than by action under this section.

(c) As used in this section, "privately owned and maintained roads" includes roads owned and maintained by a city, county, or district that are **not dedicated to use by the public or are not generally held open for use of the public for purposes of vehicular travel.**

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 12

*(Amended (as amended by Stats. 2012, Ch. 181, Sec. 80) by Stats. 2013, Ch. 605, Sec. 49. (SB 752) Effective January 1, 2014.)*

Macy's own the road as survey markers show. Taking pictures from private property or from a private road is not allowed!

**§ 84.09.010 Purpose.   The purpose of this Chapter is to provide standards for the outdoor storage of firewood. These standards are intended to reduce fire hazards in order to protect lives and property and to avoid unnecessary burdens on the resources of local fire and rescue services.(Ord. 4011, passed - -2007)**

**§ 84.09.020 Applicability.   The standards in this Chapter shall apply to the storage of firewood in nonresidential land use zoning districts, where allowed in compliance with <u>Division 2</u> (Land Use Zoning Districts and <u>Allowed Land Uses</u>), and the <u>storage of firewood in residential land use zoning districts</u>, which is an allowed accessory use.(Ord. 4011, passed - -2007)k**

**(2)   *Residential Land Use Zoning Districts.***

**    (A)   *RL (Rural Living).* The RL (Rural Living) land use zoning district provides sites for rural residential uses, incidental agricultural uses, and similar and compatible uses.**

**    (B)   *RS (Single Residential).* The RS (Residential) land use zoning district provides sites for single-family residential uses, incidental agricultural and recreational uses, and similar and compatible uses.**

### Expectation of privacy

The expectation of <u>privacy</u> is a <u>legal</u> test, originated from <u>*Katz v. United States*</u> and is a key component of <u>Fourth Amendment</u> analysis. The <u>Fourth Amendment</u> protects people from <u>warrantless searches of places</u> or <u>seizures of persons</u> or <u>objects</u>, in which they have a subjective expectation of privacy

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 13

that is deemed <u>reasonable</u>. The test determines whether an action by the government has violated an individual's reasonable expectation of privacy.

The Reasonable Expectation of Privacy Test

In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy Test in his <u>concurring opinion.</u> Although it was not formulated by the majority, this test has been the main takeaway of the case. Justice Harlan created a two-part test:

1.  The individual has exhibited an actual (subjective) expectation of privacy.

2.  The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

Elaborating on & Applying the Test

According to the <u>Supreme Court</u> in <u>Rakas v. Illinois</u> (1978), the "expectation of privacy must have a source outside of the Fourth Amendment either by reference to concepts of <u>real</u> or personal property law or to understandings that are recognized and permitted by society."

For example, private homes are at the core of Fourth Amendment protection, as they are closely associated with the ownership interest in property law.

Being present on someone else's private property generally requires the property owner's consent to take photos. Trespassing on private property.

II. SEARCHES AND SEIZURES UNDER FOURTH AMENDMENT

The courts must determine what constitutes a <u>search or seizure</u> under the Fourth Amendment. If the conduct challenged does not fall within the Fourth

Amendment, the individual will not enjoy protection under Fourth
Amendment.

A <u>search</u> under Fourth Amendment occurs when a governmental employee
or agent of the government violates an individual's reasonable <u>expectation
of privacy</u>.

**Code Enforcement**

Code Enforcement administers programs designed to protect the public's
safety, welfare, and property value through enforcement of San Bernardino
County ordinances and State/Federal laws relating to land use, zoning,
housing, public nuisances and vehicle abatement within the unincorporated
areas of the County.

Code enforcement is an enforcing agency, not a governing agency, their
duty is objective enforcement of laws and codes, not to create new laws.

Land Use Services Department Code Enforcement Notice of Violation Case#:
CSE-2022-11086 on January 11, 2023 by investigating officer: Ambur Scharf. "The
indicated violations should be corrected within 31 days from the date of this
notice. A re-inspection of this property to verify compliance will be completed
after 02/11/2023. Failure to correct the existing violation(s) may result in the
issuance of administrative citations and/or civil or **criminal prosecution**. A lien
and a special assessment on the property tax roll may also be placed against
the subject property to recover any regulatory costs incurred by the County."
Property is always civil, criminal prosecution is a threat. It is "outrageous" to have
a criminal prosecution for firewood. Where's the statute for us having firewood
on our property?

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 15

https://lus.sbcounty.gov/faq-category/fire-hazard-abatement-questions/

"A property owner may appeal the Notice and Order to Abate within the 30-day compliance timeframe. There is a $100.00 filing fee to appeal in which is refunded only if the appeal is successful." ← *It costs free United States citizens $100.00 to defend yourself against San Bernardino County Code Enforcement, which are unelected, not voted in people. Code Enforcement Officers are creating new laws to get more money out of its own people.*

"An abatement warrant will be obtained if abatement is required on parcels with structures. The administrative cost of $298.00 for warrant procurement and service is billed to the property owner." ← *Another fine of $298.00 by Code Enforcement to get more money out of good United States tax payers.*

"A work order is assigned to the County-approved contractor to abate the fire hazards on the noncompliant properties. The contractor completes the abatement and the property owner is billed for the work." ← *After Code Enforcement has assigned someone you don't know to trespass and don't even allow you to pay your own people to fix the problem.*

"An abatement invoice is generated and sent to the property owner of the non-compliant property for all outstanding costs, which may include: Non-compliance fee, Case Closure fee, Warrant fee, and County contractor abatement cost." ← *An unknown amount of money can be forced upon homeowner. Code Enforcement doesn't even provide an estimate, there is an unlimited amount of money Code Enforcement can charge.*

"After 60 days of non-payment:

A **$123.00** late fee is assessed and a lien will be placed against the property with a **$211.00** placement of lien fee.

Unpaid invoices may be forwarded to the **Revenue Recovery Division for collection** and an additional 25% fee may be added to the unpaid balance.

Unpaid invoices may be forwarded to the County Tax Collector as a special assessment, and the unpaid balance may be added to the subsequent property tax bill." ← ***This is a money grab by unelected officers. Just like a Police Officer, Code Enforcement Officers cannot make a new law up and enforce it as they see fit.***

"You may have received a notice because at the time of inspection your property showed fire hazards (weeds/grass overgrown). However, it is possible that your property was cleaned after our inspection but a notice was still sent to you. In this case, we would like to thank you for maintaining your property. Please keep in mind that weeds/grasses need to be kept below 4 inches at all times." ← ***Notice weed abatement are for weeds/grass, not for necessary firewood according to state and federal laws.***

"Yes, photos are taken at first inspection and are sent to the property owner on the Notice to Abate.  Photos are also taken at second inspection, which is prior to the issuance of an Administrative Citation. In addition, photos are taken of a non-compliant property before and after abatement work is performed." ← ***The photos code enforcement takes do not have a time stamp, date, or name of Officer who took the photos.***

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 17

"If any work is completed on the property by the County there will be a **bill generated**. Since the enforcement process began while you were the owner you may be **responsible for abatement costs, fines and or penalties**." ← *3 more ways Code Enforcement is trying to get money from its own people.*

"Yes. There is a $76.00 administrative fee plus the cost of the work. It is a maximum of **$627.00** per hour. We cannot provide estimates." ← *Another money grab and opportunity for code enforcement officers to steal money from its own money.*

"The FHA Program uses the County Tax Assessor's information to obtain property information which includes mailing address. Please verify your property information and if changes are needed please contact the tax assessor's office." ← *Where is the reasonable expectation of a citizen's right to privacy?*

"County Code requires **100 feet** of defensible space around structure. You are welcome to **make arrangements with your neighbor for additional hazard abatement.**" ← *Homeowners are responsible for neighbor's fire hazards? Code Enforcement Officers are forcing neighbors to pay for other neighbor's fire hazards?*

"A list of Contractors who have attended and participated in an informational meeting can be obtained here: Contractor List. Note: While these contractors have attended an informational meeting, the **County does not evaluate, supervise, monitor, or otherwise warrant the quality of these contractors**, nor does the County endorse any contractor on this list over any other contractor. Property owners are not obligated to select a contractor from this list. It is being provided as a courtesy to assist property owners." ← *County Code Enforcement*

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 18

***Officers are empowering unknown, potential unknown criminals to be allowed to trespass, damage, and bill unknown people without homeowner's approval.*** "Contact our office at (909) 884-4056 for the status on your property." ← ***Homeowners have to contact Code Enforcement Officers to know if homeowner's property is clear or not (a lot of trouble).***

§ 23.0304 Mountain Area Fire Hazard Abatement.

(3) All shrubs that are within 15 feet of structures that produce high-energy release components and are considered high fire fuels, not to include low energy release

deciduous ornamental plants that are well-pruned, well-spaced and free of dead or

damaged foliage. High-energy-release shrubs include, but are not limited to, Manzanita,

Service Berry, Mountain Whitethorn, Sage, Ironwood, Juniper Shrubs, Spanish Broom

and other species as determined by the County Fire Chief/Fire Warden or their designee

to constitute a fire hazard.

More than sixty species of manzanita occur in California, twelve of which are found in the Los Padres. They range from shrubs only a few feet tall to some as tall as twenty feet, and are all characterized by reddish or orangish bark, gnarled trunks, and waxy leaves. The plants produce bell-like white-to-pink flowers in the winter and spring, and then produce apple-like fruits, giving them

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 19

their name manzanita, or "little apple" in Spanish. Native Americans would often use these fruits to make meal and cider, and much of the wildlife of the chaparral, including bears, deer, and squirrels, depend on these fruits for food throughout the summer.

We received a note saying we had to demo our manzanita because it was a fire hazard. Code enforcement has given notices to cut down manzanitas to many people.

According to the California Department of Fish and Wildlife, Pallid manzanita (Arctostaphylos pallida) is a California endangered plant species, which means that killing or possessing this plant is prohibited by the California Endangered Species Act (CESA) This species is also listed as threatened under the federal Endangered Species Act.

If a property owner fails to clear their parcel of the weeds and/or debris once notified, the City of San Bernardino County will have the weed abatement work done by a commercial contractor and bill for the charges incurred at a premium rate, plus in many cases an additional administrative fee. If the City is forced to clear your property and the charges remain unpaid, a lien against your property will be recorded.

**Burrtec's Financial Connection with Code Enforcement**

**"COMPLIANCE MONITORING AND ENFORCEMENT Monitoring & Reporting Requirements: Burrtec will partner with jurisdictions to maintain records that demonstrate compliance**. These records will document the jurisdiction's progress in **complying** with the regulation in accordance with the statutory requirements. Beginning with an Implementation Record chronicling the development, progress, and accomplishments related to SB 1383 mandates, **Burrtec will assist jurisdictions in documenting qualified customers**, edible food generators,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 20

material processing waste characterizations, educational and outreach activities conducted, route audit results compiled, **complaints investigated**, recycled organic material products procured, and ultimately the amount of organic waste diverted from landfill operations. **Jurisdictional Enforcement: The SB 1383 enforcement structure allows CalRecycle to focus on compliance assistance first and dedicate enforcement efforts to serious offenders**. Regulations allow for flexibility and deadline extensions in some instances when there are extenuating circumstances causing compliance issues. While the regulation becomes effective **Jan. 1, 2022, enforcement is an escalating process** and timelines are **not triggered until a Notice of Violation (NOV) is issued**. Below is an illustration of the time allocated for each step in the enforcement process." ⬅ *Code Enforcement is clearly empowering a private company to gain access to personal records and force free citizens to pay money for a service they may not need.*



"Starting **January 1, 2022, Burrtec will partner with Code Enforcement** or designated jurisdiction staff to enforce compliance with SB 1383 requirements. Burrtec will continue to complete periodic compliance reviews of commercial businesses and multifamily establishments to ensure they are subscribed to organic recycling services. Jurisdictions may consider incorporating certain SB 1383 inspection requirements with existing health inspections. On or about April 1, 2022, Burrtec will begin conducting route reviews and /or waste

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 21

characterizations consistent with the requirements set forth in the regulation. Beginning **January 1, 2024, jurisdictions are expected to begin enforcing compliance with the issuance of Notice of Violations**." ← *Code enforcement is now helping Burrtec to also obtain money from local residents as well as Code Enforcement enrichment.*

"**Complaint Investigation**: The statute includes a **complaint and investigation requirement** to process a complaint received for **potential violations associated with SB 1383**. **Complaints** must be received in **writing and investigated within 90 days from their receipt. Burrtec will collaborate with jurisdictions and recommend optional procedures required**." ← *More evidence of Burrtec and Code Enforcement working together to get people's money. Unknown optional procedures will be required, what does that mean? (An undefined law)*

At macyland property APN# 0342-031-01 a demolition permit was required for a house that was already demolished costing $266. The county was telling us we had to get another demolition permit for a building that was demolished before we bought the property trying to get more money out of us. Under the fourth amendment the U.S. constitution grants the right to be free from unreasonable searches and seizures. The code enforcement officer was informed that he was walking on private property. The code enforcement officer did not have a search warrant to enter the property. Camara v. City of San Francisco, 387 US 523 (1967) states that the fourth amendment applies to administrative searches. **From CAMARA v. MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO (1967)**

"The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant. Such an approach neither endangers time-honored doctrines applicable to criminal investigations nor makes a nullity of the probable cause requirement in this area. It merely gives full recognition to the competing public and private interests here at stake and, in so doing, best fulfills the historic purposes behind the constitutional right to be free from unreasonable government invasions of privacy."

"In this case, appellant has been charged with a crime for his refusal to permit housing inspectors to enter his leasehold without a warrant. There was no emergency demanding immediate access; in fact, the inspectors made three trips to the building in an attempt to obtain appellant's consent to search. Yet no warrant was obtained and thus appellant was unable to verify either the need for or the appropriate limits of the inspection. No doubt, the inspectors entered the public portion of the building with the consent of the landlord, through the building's manager, but appellee does not contend that such consent was sufficient to authorize inspection of appellant's premises. Cf. Stoner v. California, 376 U.S. 483; Chapman v. United States, 365 U.S. 610; McDonald v. United States, 335 U.S. 451. Assuming the facts to be as the parties have alleged, we therefore conclude that appellant had a constitutional right to insist that the inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to the inspection. It appears

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 23

from the opinion of the District Court of Appeal that under these circumstances a writ of prohibition will issue to the criminal court under California law.

The judgment is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered."

← The county trespassed on his property wanting to search his property and the appellant denied it three times and was "charged with a crime for his refusal to permit housing inspectors to enter his leasehold without a warrant." Again, affirming that you do not have to allow the county to walk onto your property and drive on your private road. And yet the county has threatened to prosecute us criminally in our document.

**State v. Santiago, 218 N.J. Super. 427 (N.J. Sup. Ct. 1986).**

A DEP inspector was charged with criminal trespass for entering a licensed pesticide applicator's business premises.

**Johnson v. United States, 333 U.S. 10, 14:**

"Where officers detected the odor of burning opium emanating from a hotel room, entered without a search warrant and without knowing who was there, arrested the only occupant, searched the room and found opium and smoking apparatus, the search violated the Fourth Amendment to the Federal Constitution; and a conviction for a violation of the federal narcotic laws based on the evidence thus obtained cannot be sustained. Pp. 11-17. 2. As a general rule, the question when the right of privacy must reasonably yield to the right of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 24

search must be decided by a judicial officer, not by a policeman or government enforcement agent. Pp. 13-14. 3. There were no exceptional circumstances in this case sufficient to justify the failure of the officer to obtain a search warrant. Pp. 14-15.  4. It being conceded that the officer did not have probable cause to arrest petitioner until he entered the room and found her to be the sole occupant, the search cannot be sustained as being incident to a valid arrest. Pp. 15-16. 5. The Government cannot at the same time justify an arrest by a search and justify the search by the arrest. Pp. 16-19. 6. An officer gaining access to private living quarters under color of his office and of the law must then have some valid basis in law for the intrusion. P. 17. 162 F.2d 562, reversed."

"The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent."

DATE: _____

_____

(Signature)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL - 25